**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MARK COOPER,

                            Plaintiff,

                                                            **COMPLAINT**

              -against-

                                                            Plaintiff Demands
UPSTAIRS, DOWNSTAIRS OF NEW YORK,                           a Trial by Jury
INC.,
MICHAEL GRUMMONS,
ROBERT DEBENEDICITS, and
PAUL GALLUCCIO

                            Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## PRELIMINARY STATEMENT

Plaintiff MARK COOPER complains pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e et seq. ("Title VII"), New York State law, and New York City law, and seeks

damages to redress the injuries Plaintiff suffered as a result of, *inter alia,* sex discrimination,

gender discrimination, sexual orientation discrimination, race discrimination, retaliation, and a

hostile work environment.


## JURISDICTION & VENUE

1. This Court has federal question jurisdiction over the Title VII claim pursuant to 28 U.S.C. §

1331.

2. This Court has supplemental jurisdiction over the related New York State and City law causes

of action asserted in this complaint pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because the events or omissions which gave rise to the claims asserted herein occurred within this Court's jurisdiction.

4. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

5. At all times material, Plaintiff MARK COOPER (hereinafter referred to as "Plaintiff" or "COOPER") is an individual male residing in the State of New York, County of Queens.

6. At all times material, UPSTAIRS, DOWNSTAIRS OF NEW YORK, INC., is a domestic business corporation duly existing by the virtue and laws of the State of New York, doing business at 236 East 58th Street, New York, New York 10022.

7. At all times material, Defendant UPSTAIRS, DOWNSTAIRS OF NEW YORK, INC. does business as the "Townhouse Bar of New York."

8. At all times material, Defendant MICHAEL GRUMMONS (hereinafter referred to as "GRUMMONS") was and is the part-owner and operator of Townhouse Bar of New York.

9. At all times material, Defendant ROBERT DEBENEDICTIS (hereinafter referred to as "DEBENEDICTIS") was and is the part-owner and operator of Townhouse Bar of New York.

10. At all times material, Defendant PAUL GALLUCCIO ("GALLUCCIO") was and is the part-owner and operator of Townhouse Bar of New York.

## MATERIAL FACTS

11. On or about November 4, 2016, Defendants' Owner and Supervisor GRUMMONS hired Plaintiff as a Marketing Manager.

12. In or around November of 2016, Defendants' Supervisor GRUMMONS demanded that

Plaintiff start work as a doorman – not the promised role of Marketing Manager – to get to know the regular patrons. GRUMMONS told Plaintiff that Plaintiff would be good doorman because Plaintiff was "very attractive."

13. In or around November of 2016, Defendants' Supervisor GRUMMONS would inappropriately touch Plaintiff's lower back, butt, and shoulders.

14. In or around November of 2016, Defendants' Supervisor GRUMMONS would make comments about Plaintiff's body, such as, but not limited to, asking if Plaintiff went to the gym.

15. In or around November of 2016, Defendants' Supervisor GRUMMONS would ask Plaintiff if he was straight or gay. Plaintiff would ignore GRUMMONS or change the topic to work-related matters.

16. In or around November of 2016 through January of 2017, Defendants' Supervisor GRUMMONS scheduled Plaintiff to work every Monday until close. On these Mondays, GRUMMONS always closed with Plaintiff.

17. In or around November of 2016 through January of 2017, every Monday, Defendants' Supervisor GRUMMONS would ask Plaintiff to go home and have sex with him. Plaintiff was shocked and appalled by GRUMMONS's comments and unwanted sexual advances.

18. In or around November of 2016 through January of 2016, Defendants' Supervisor GRUMMONS commented on Plaintiff's appearance, stating, among other things, that Plaintiff's hair looked like a bush and asked how Plaintiff cut it. GRUMMONS then declared that he felt Plaintiff was part "Oriental" and he heard that "Oriental" men had small penises.

19. Thereafter, Defendants' Supervisor GRUMMONS begged Plaintiff to show his penis to him. Plaintiff told GRUMMONS his sexual advances were completely unwanted and

unprofessional.

20. In or around November of 2016 through January of 2017, Defendants' Supervisor GRUMMONS would tell Plaintiff that he would watch Plaintiff through a live-feed-camera from his home while Plaintiff worked. Plaintiff became increasing uncomfortable.

21.  In or around November of 2016 through January of 2017, on many occasions, Defendants' Supervisor GRUMMONS commented that he felt Plaintiff was a straight male and had a very "nice ass."

22. In or around November of 2016 through January of 2017, on an almost daily basis, Defendants' Supervisor GRUMMONS would attempt to touch Plaintiff's butt.

23. In or around November of 2016 through January of 2017, Plaintiff instructed Defendants' Supervisor GRUMMONS not to touch him inappropriately. GRUMMONS disregarded Plaintiff's demand and did as he pleased.

24. In or around November of 2016 through January of 2017, Defendants' Supervisor GRUMMONS would ask Plaintiff to go away with him on vacation and have sex with him because, as GRUMMONS would share, GRUMMONS's husband was disabled and had not had sex with him in many years. At one point, GRUMMONS commented that it had been so long since having sex that he regarded himself a virgin "down there."

25. On or about November 28, 2016, when Plaintiff and Defendants' Supervisor GRUMMONS were alone finishing up nightly paperwork, GRUMMONS followed Plaintiff into a restroom. As Plaintiff attempted to exit the restroom, GRUMMONS made a sexual advance toward Plaintiff stating, "Why don't you take your penis back out so I can suck it?" Plaintiff left the restroom feeling violated and disgusted.

26. Following the bathroom incident, Defendants' Supervisor GRUMMONS called Plaintiff into

his office and asked why Plaintiff did not like him sexually. GRUMMONS proceeded to tell Plaintiff that he was very lonely and that he wanted Plaintiff to go home with him that night to have sex.

27. Defendants' Supervisor GRUMMONS was insistent and, in a failed attempt of *quid pro quo* sexual harassment, told Plaintiff his job was on the line if Plaintiff did not comply with GRUMMONS's sexual demands. Plaintiff again refused and told GRUMMONS his request was unprofessional and unwanted.

28. Defendants' Supervisor GRUMMONS then advised Plaintiff that if Plaintiff would "eat his ass out with his tongue" that Plaintiff would be "golden" and that Plaintiff would advance very quickly within the ranks of the company.

29. Plaintiff then asked Defendants' Supervisor GRUMMONS if his advancing in the company was contingent on sexual favors. GRUMMONS gestured "yes," nodding his head. Plaintiff was shocked, angered and disgusted.

30. For the remainder of the evening, Defendants' Supervisor GRUMMONS made several attempts to get close to Plaintiff. Plaintiff continued to avoid GRUMMONS.

31. Eventually, Defendants' Supervisor GRUMMONS grabbed Plaintiff by the penis. Plaintiff forcefully knocked GRUMMONS's hand away. Plaintiff was disturbed and distraught by the unwanted sexual contact.

32. Immediately after Plaintiff refused Defendants' Supervisor GRUMMONS's forceful advances, GRUMMONS told Plaintiff that he "had better learn how to play the game" and that it would be in Plaintiff's best interest to comply. GRUMMONS again asked Plaintiff if he was straight or gay and told Plaintiff that "I always get what I want and who I want when I am focused on that person." GRUMMONS continued to tell Plaintiff, "I want you, I am focused

on you and I am going to have you." GRUMMONS again demanded Plaintiff have sex with him, to which Plaintiff again responded with an adamant "no."

33. In or around December of 2016, Defendants' Supervisor GRUMMONS asked Plaintiff to have anal sex with him and "eat me out with your mouth and tongue."

34. In or around December of 2016, Defendants' Supervisor GRUMMONS told Plaintiff that Plaintiff was playing hard to get and GRUMMONS was going to go after Plaintiff every time Plaintiff came into work. GRUMMONS advised Plaintiff that he was getting tired of Plaintiff refusing his advances and told Plaintiff that he needs to make good and smart choices to make things much easier for him.

35. In or around December of 2016, Defendants' Supervisor GRUMMONS continued to make comments about Plaintiff's heritage and ethnicity. GRUMMONS said that he felt Plaintiff had a small penis because of his ancestry, and on many occasions stated that if Plaintiff had a small penis it was "okay" because that would mean less pain for GRUMMONS while Plaintiff was penetrating him.

36. Plaintiff attempted to avoid contact with Defendants' Supervisor GRUMMONS. GRUMMONS constantly sought out Plaintiff during work and continued with unwanted sexual advances.

37. In or around the beginning of January 2017, Defendants' Supervisor GRUMMONS was relentless in his attempts to have sex with Plaintiff. GRUMMONS invited Plaintiff to trips to Washington D.C.

38. In or around January of 2017, Defendants' Supervisor GRUMMONS continued to inappropriately touch and brush up against Plaintiff.

39. On or about January 29, 2017, Defendants' Supervisor GRUMMONS demanded Plaintiff

come into his office. Therein, GRUMMONS told Plaintiff that Plaintiff was obviously a "straight guy" and would not fit in at Defendants' bar because Plaintiff did not "play the game." GRUMMONS advised Plaintiff that his "days were numbered."

40. On that same day, in retaliation for not complying with his sexual advances, Defendants' Supervisor GRUMMONS demanded that Plaintiff wash windows and mop floors or Plaintiff would be fired immediately. Plaintiff was confused as he was initially hired to provide marketing expertise for Defendants. When Plaintiff questioned the new, retaliatory job duty, GRUMMONS terminated Plaintiff.

41. On or about January 29, 2017, Plaintiff clocked out and went to Defendants' Supervisor GRUMMONS's office to inquire about his last paycheck. GRUMMONS advised Plaintiff that Plaintiff did not follow company policies, rules or regulations and when Plaintiff learned to "play the game" to give him a call.

42. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

43. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

44. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

45. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full

knowledge of the law, Plaintiff demands Punitive Damages against the Defendant severally.

46. Plaintiff hereby demands reinstatement to his position.

47. The above are just some examples of some of the unlawful discrimination and retaliation to which Defendant subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

49. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

50. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender and race.

51. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's gender, sexual orientation, and race.

**AS A SECOND CAUSE OF ACTION FOR
RETALIATION UNDER TITLE VII
(Not Against Individual Defendants)**

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

54. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF
ACTION UNDER STATE LAW
DISCRIMINATION**

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

56. New York State Executive Law § 296 provides that: "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

57. Defendants violated the section cited herein by discharging, creating and maintaining

discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's sex and race.

58. Defendants violated the section cited herein as set forth.

**AS A FOURTH CAUSE OF
ACTION UNDER STATE LAW
<u>RETALIATION</u>**

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

60. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

61. Plaintiff objected to and repeatedly opposed the on-going, severe and pervasive hostile work environment and unlawful discrimination to his supervisors numerous times.

62. As a direct consequence of Plaintiff opposing discrimination in the workplace, Defendants unlawfully retaliated against Plaintiff by terminating, materially altering his terms and conditions of employment, and intensifying their discriminatory comments and conduct.

63. Defendants violated the section cited herein as set forth.

**AS A FIFTH CAUSE OF
ACTION UNDER STATE LAW
<u>AIDING & ABETTING</u>**

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden

under this article, or attempt to do so."

66. Defendants participated in, aided, abetted, and encouraged Defendants' employee to unlawfully harass and retaliate against Plaintiff.

67. Defendants violated the section cited herein as set forth.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

69. The Administrative Code of the City of New York § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

70. Defendants engaged in an unlawful discriminatory practice and violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his gender, sexual orientation, and race, together with harassment and causing a hostile work environment based on same.

71. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New York City Administrative Code Title 8.

72. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

74. The New York City Administrative Code Title 8, § 8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

75. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1) (e) by discriminating and retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of his employer.

76. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

78. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

79. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing

the above discriminatory, unlawful and retaliatory conduct.

80. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR INTERFERENCE WITH A PROTECTED RIGHT UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

82. New York City Administrative Code Title 8-107(19) provides that: "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

83. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR SUPERVISOR LIABILITY UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

85. New York City Administrative Code Title 8-107(13)(b) provides that: "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where; (i) the employee or agent exercised managerial or supervisory responsibility; (ii) the employer knew of the

employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (iii) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

86. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:   New York, New York
        July 17, 2018

                                        Very truly yours,

                                        **DEREK SMITH LAW GROUP, PLLC**


                                By:     **/s/ Alexander G. Cabeceiras**
                                        Alexander G. Cabeceiras, Esq.
                                        One Penn Plaza, Suite 4905
                                        New York, NY 10119